UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-267 (ACR) |
| v. : | |
| : | |
| JUDY FRAIZE : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Judy Fraize has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Fraize to 14 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.   **Introduction**

Defendant Judy Fraize, a seventy-one-year-old retiree, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress' certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power

1

after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Fraize pleaded guilty to violations of 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). The government's recommendation is supported by Fraize's (1) length of time spent inside the Capitol, and (2) knowing participation in a dangerous crowd of rioters that amassed outside the doors to the House Chamber, where members of Congress were certifying the electoral votes.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Fraize's crimes support a sentence of 14 days' incarceration on Count Three and 36 months' probation on Count Four.

**II.   Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 22 (Statement of Offense).

*Defendant Fraize's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Fraize attended former President Trump's speech at the Ellipse, before joining the crowd that marched to the Capitol. A video obtained from Fraize's Google account

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

appears to have been taken during her walk to the Capitol down Pennsylvania Avenue. In the video, an individual directly in front of Fraize, using a megaphone, announced, "Nothing says American like taking our country back. The Capitol must fall, we must win this fight, we cannot lose, and we cannot retreat." *See* Image 1.



*Image 1: Screenshot of Video from Fraize's Google Account*

Fraize's Google account also contained another video filmed closer to the Capitol grounds. In this video, the crowd is streaming toward the Capitol, and a voice that appears to be Fraize's is

heard saying, "they said on Twitter that they breached the Capitol, four layers through, my my." *See* Image 2.



*Image 2: Screenshot of Video from Fraize's Google Account*

Once on the Capitol grounds, after other rioters overran the police on the Northwest Stairs, Fraize joined the mob of rioters who ascended to the Upper West Terrace. At approximately 2:39 p.m., Fraize entered the U.S. Capitol through the Upper West Terrace door, approximately five

minutes after other rioters breached it. *See* Image 3. As she entered the U.S. Capitol building, Fraize held up a cell phone and appeared to be taking pictures or recording video.



*Image 3: Fraize entering the U.S. Capitol*

Once inside, Fraize walked up a flight of stairs that led to the second floor of the U.S. Capitol, specifically, to the area west of the Rotunda. From there, Fraize entered the Rotunda and walked toward a doorway that leads toward Statuary Hall. During this time, there was a large group of rioters unlawfully inside of the Rotunda.

At approximately 2:41 p.m., Fraize joined a group of rioters who went from the Rotunda toward Statuary Hall and in the direction of the House Chamber. *See* Image 4.



*Image 4: Fraize in Statuary Hall*

As shown in the Capitol CCTV footage below from approximately 2:43 p.m., Fraize joined the mob of rioters crowding outside of the doors to the House Chamber. *See* Image 5. This group swelled in size, threatening members of Congress who were actively evacuating from the chamber.



*Image 5: Fraize in a crowd of rioters near the House Chamber doors*

At approximately 2:47 p.m., Fraize began walking back toward the Rotunda. Once back in the Rotunda, she interacted with other rioters, posed for pictures, and appeared to record video or

take photos. *See* Image 6. At approximately 3:02 p.m., police officers entered the Rotunda from the south and west doorways and attempted to clear rioters out of the Rotunda by issuing commands to leave and directing rioters toward the exit. Shortly thereafter, Fraize walked over to the northwest side of the Rotunda, where she sat on a bench.



*Image 6: Fraize in the Rotunda*

At approximately 3:08 p.m., an officer with the Washington, D.C. Metropolitan Police Department told Fraize and other rioters sitting on the bench multiple times that they needed to leave. Fraize responded, "blue lives matter." After multiple orders, Fraize stood up and walked toward an exit on the east side of the Rotunda. As she walked toward the exit, Fraize told the officer, "We gotta take our country back." *See* Image 7.

7



*Image 7: Fraize saying, "We gotta take our country back"*

At approximately 3:15 p.m., Fraize entered the East Foyer with a group of rioters who police had directed out of the Rotunda. About a minute later, Fraize exited the U.S. Capitol through the Rotunda Doors. In total, Fraize was inside of the U.S. Capitol building for approximately thirty-seven minutes.

*Defendant's Interview*

On July 6, 2021, FBI special agents interviewed Fraize at her residence. During the interview, Fraize admitted that she entered the Capitol building on January 6, 2021. Fraize told agents that she had travelled from Dallas, Texas to Washington, D.C. as part of a convoy to attend a rally for the former President. Fraize provided the interviewing agents with a video that she had taken inside of the Capitol and a picture of herself taken at the rally on January 6, 2021.

*The Charges and Plea Agreement*

On May 31, 2024, the United States charged Fraize by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). On June 11, 2024, pursuant to a plea agreement, Fraize pleaded guilty to Counts Three and Four of the

Information, charging her with a violation of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). By plea agreement, Fraize agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Fraize now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Fraize faces, on each count, up to six months of imprisonment and a fine of up to $5,000. Fraize must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078–79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration on Count Three and 36 months' probation on Count Four.

#### A.   The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Fraize's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Fraize, the absence

of violent or destructive acts is not a mitigating factor. Had Fraize engaged in such conduct, she would have faced additional criminal charges.

The most important factors in Fraize's case are (1) the length of time she spent inside the Capitol, and (2) her joining the mob of rioters that amassed outside the House Chamber, while Congress was certifying electoral votes inside.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 days' incarceration on Count Three and 36 months' probation on Count Four in this matter.

### B. Fraize's History and Characteristics

Fraize is a seventy-one-year-old retiree who has lived in Texas for most of her life. PSR ¶¶ 51, 70. Fraize previously held jobs as a licensed vocational nurse, quality control inspector for a steel company, meter inspector for a water company, and worked in the real estate industry. PSR ¶¶ 70–77. According to the PSR, Fraize has one adult son, PSR ¶ 48, and currently resides with her elderly aunt, who she cares for. PSR ¶ 50. The PSR reports that Fraize has no criminal history prior to the instant offense. PSR ¶¶ 31–36.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B–C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Although Fraize has no prior criminal history, her decision to participate in the events of January 6, 2021, to enter the U.S. Capitol Building during the riot, and to contribute to the chaos inside calls for substantial deterrence. This Court should impose an appropriate sentence to deter Fraize from repeating these or similar criminal acts.

Even before she reached the Capitol grounds, Fraize was on notice that the crowd she had joined was potentially violent. As she walked down Pennsylvania Avenue, a man in front of her declared over a megaphone that "the Capitol must fall." Before entering the restricted area, Fraize

stated in a video she recorded that the mob had "breached the Capitol." Despite knowing the Capitol was a restricted area, Fraize still chose to join the mob and unlawfully enter the Capitol.

The amount of time Fraize spent inside the Capitol during the riot—thirty-seven minutes—is a significant aggravating factor. While inside the Capitol, Fraize joined the mob of rioters who gathered outside the House Chamber. Though Fraize herself was not violent, her decision to add to the size of that mob outside the House Chamber contributed to the fear of those inside, the difficulty for law enforcement to clear the area, and the disruption of Congress' essential work happening in the Capitol that day.

With the 2024 presidential election approaching, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Fraize in a manner sufficient to deter her specifically, and others generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[2] This Court must sentence Fraize based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Fraize has pleaded guilty to Counts Three and Four of the Information, for violating 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). These offenses are Class B misdemeanors. 18 U.S.C.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

§ 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Mark Nealy*, 23-cr-278-TSC, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). Like Fraize here, Nealy entered the Capitol building shortly after the breaches on the Upper West Terrace. Nealy walked around the interior of the Capitol building and was in the Capitol building for approximately thirteen minutes. Judge Chutkan sentenced Nealy to 14 days' incarceration.

In *United States v. Christopher Keniley*, 24-cr-001-TSC, the defendant pleaded guilty to 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(20(G). Like Fraize, Keniley entered through a breach on the west side of the Capitol—Keniley through the Senate Wing Door, Fraize through the Upper West Terrace Door. Inside, Keniley, like Fraize, walked deep into the Capitol and interacted with law enforcement. Judge Chutkan sentenced Keniley to 10 days' incarceration and 12 months' probation.

In *United States v. Cameron Campanella*, 23-cr-231, the defendant pleaded guilty to 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(20(G). This Court sentenced Campanella to 12

13

months' probation. While there are some similarities between *Campanella* and this case—both defendants entered through breaches on the west side of the Capitol—there are meaningful differences. Most critically, Campanella was inside the Capitol for approximately two minutes, whereas Fraize was inside the Capitol for approximately thirty-seven minutes—a length of time that sets her apart from many other rioters. The government advocated for a term of incarceration in *Campanella*, but respects the Court's judgment. Here, the government again believes that a term of incarceration as a form of punishment and deterrence is warranted, and there are meaningful differences from prior defendants this Court has sentenced.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.   **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

14

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).³ Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Fraize must pay $500 in restitution, which reflects in part the role Fraize played in the riot on January 6.⁴ Plea Agreement, ECF No. 21 at 6–7. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Fraize's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 107.

## VI.  Fine

Fraize's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G) subject her to a statutory maximum fine of $5,000 on each count. *See* 18 U.S.C. § 3571(b)(6). In determining

---

³ The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property . . . including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

⁴ The government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp. 2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). Here, the Fraize's financial assets set forth in the PSR suggest that she is unable, and is unlikely to become able, to pay a fine.

**VII.  Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days' incarceration on Count Three and 36 months' Probation on Count Four, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Fraize's liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

/s/ *Terence A. Parker*
Terence A. Parker
Trial Attorney (Detailee)
U.S. Attorney's Office for the
District of Columbia
NY Bar No. 5775192
Email: Terence.Parker3@usdoj.gov
Phone: (202) 252-7859